UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANGELA LYNN FAIRFIELD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:16-cv-01176-SEB-MPB |
| ) | |
| NANCY A. BERRYHILL Acting ) | |
| Commissioner for the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**REPORT AND RECOMMENDATION ON
APPROPRIATE DISPOSITION OF THE ACTION**

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a Report and Recommendation as to its appropriate disposition. (Docket No. 15). Plaintiff Angela Lynn Fairfield seeks judicial review of the Social Security Administration's final decision deeming her ineligible for Disability Insurance Benefits and Supplemental Security Income. The matter is fully briefed. (Docket No. 25, Docket No. 30, Docket No. 34). It is recommended that the District Judge **REMAND** the decision of the Commissioner of the Social Security Administration finding that Plaintiff Angela Lynn Fairfield is not disabled, pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration, consistent with this opinion.

**Introduction**

On May 13, 2013, Angela Lynn Fairfield filed an application for disability and Disability Insurance Benefits under Title II of the Social Security Act and for Social Security Supplemental

Security Income disability benefits under Title XVI of the Social Security Act. She is alleging disability beginning January 9, 2012. A hearing was requested and held on April 27, 2015, before Administrative Law Judge (ALJ) Richard Horowitz. On May 18, 2015, the ALJ denied Ms. Fairfield's application. On March 24, 2016, the Appeals Council denied Ms. Fairfield's request to review the ALJ's decision, thereby making the ALJ's decision the final decision of the Social Security Commissioner. 20 C.F.R. § 404.981; *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). On May 11, 2016, Ms. Fairfield timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

## **Standard for Proving Disability**

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Plaintiff is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 1382c(a)(3)(B). The Social Security Administration ("SSA") has implemented these statutory standards by prescribing a five-step sequential evaluation process. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe. If they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either

singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). The Listings include medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her vocational profile (age, work experience, and education) and her RFC. If so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

### Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. This Court must affirm the ALJ's decision unless it lacks the support of substantial evidence or rests upon a legal error. *See, e.g.*, *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009); 42 U.S.C. §

405(g). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). The ALJ—not the Court—holds discretion to weigh evidence, resolve material conflicts, make independent factual findings, and decide questions of credibility. *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971). Accordingly, the Court may not re-evaluate facts, reweigh evidence, or substitute its judgment for the ALJ's. *See Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made. The ALJ must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

### I. The ALJ's Sequential Findings

The ALJ found that Ms. Fairfield had met the insured status requirement of the Social Security Act. Although the claimant worked after the alleged January 9, 2012, disability onset date at what the ALJ indicated appeared to be a substantial gainful activity level, the ALJ indicated that the insured status requirement was met because there was a 12-month period of non-substantial gainful activity. (Docket No. 13-2 at ECF p. 16) He also indicated he was giving Ms. Fairfield the benefit of the doubt. *Id.* Therefore, the ALJ proceeded to step two of the analysis.

At step two, the ALJ determined that Ms. Fairfield, who was forty-one years old at the time of the alleged onset date, had the following severe impairments: schizoaffective disorder;

bipolar disorder; migraines; cervical disc disease with stenosis, spondylosis, and cervical fusion; non-epileptic seizure disorder of unknown etiology; and mild changes in left C5 innervated muscles consistent with a chronic radiculopathy. (Docket No. 13-2 at ECF pp. 17-18); *See* 20 C.F.R. §§ 404.1571 *et seq.*, and 416.971 *et seq.* The ALJ also determined that Ms. Fairfield had the following non-severe impairments: asthma, scoliosis, two transient eischemic attacks, which resolved after surgical repair of a congenital defect, peptic ulcer disease, optic gliomas status-post chemo radiation, and mild cartilaginous thinning of the left knee. (Docket No. 13-2 at ECF p. 18).

The ALJ found that Ms. Fairfield's alleged impairments of thoracic outlet syndrome and "possible conversion disorder" have not been confirmed with objective testing or repeated clinical findings. Thus, the ALJ found that these impairments were not medically determinable. (Docket No. 13-2 at ECF pp. 18).

At step three, the ALJ found that Ms. Fairfield's combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R § 404, subpart P, Appendix 1, explicitly considering Listing 1.04 (Disorders of the spine), 11.02 (Epilepsy—convulsive epilepsy), 11.03 (Epilepsy—nonconvulsive epilepsy), 11.04 (central nervous system vascular accident), 11.14 (Peripheral neuropathies), 12.03 (Schizophrenic, paranoid and other psychotic disorders), and 12.04 (Affective disorders) (Docket No. 13-2 at ECF p. 18).

The ALJ found Ms. Fairfield did not meet Listing 1.04 because, in part, she failed to present a condition that results in compromise of a nerve root with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication established by findings on appropriate medically acceptable imaging and manifested by chronic pain and weakness. (Docket No. 13-2 at ECF p. 18). The ALJ found Listing 11.02 and 11.03

were not met because Ms. Fairfield has not experienced seizures more than once weekly, with or without medication. *Id.* Likewise, 11.03 was not met because claimant's history of transient ischemic attacks were resolved after a surgical repair of a congenital defect. (Docket No. 13-2 at ECF pp. 18-19).

The ALJ found the severity of claimant's mental impairments did not meet or medically equal Listings 12.03 and 21.04. The ALJ considered the four function areas set out in the disability regulations, i.e., the "paragraph B" criteria. (Docket No. 13-2 at ECF pp. 19-20). The ALJ found that Ms. Fairfield's (1) activities of daily living were moderately limited, noting while she testified she hears voices, has migraines, and cannot focus on her hobbies—among other alleged limitations—she also can care for her own personal needs and assist with the chores such as washing dishes, vacuuming, and helping with laundry; (2) social functioning was moderately limited, noting that the claimant's testimony that she has trouble getting along with others and does not follow instructions well was considered against other testimony that she goes shopping in stores, helps her son with projects, and has never been fired due to problems getting along with others; (3) concentration, persistence, or pace was also moderately limited, indicating that claimant's testimony that she cannot pay bills or handle bank accounts, or handle stress was incompatible with evidence that she is able to take care of her personal needs, shop in stores, and help her son with projects; (4) and no episodes of decompensation for an extended period of time. (Docket No. 13-2 at ECF pp. 19-20).

Prior to Step four, the ALJ determined that Ms. Fairfield had the RFC to perform medium work with the following limitations:

> [C]an lift 50 pounds occasionally, and 25 pounds frequently; can carry 50 pounds occasionally and 25 pounds frequently; can sit for six hours in an eight hour workday, stand for six hours in an eight hour workday, and walk for six hours in an eight hour workday; can

6

>push and pull as much as she can lift and carry; can frequently use left hand controls; can frequently reach overhead and in all other directions with the left arm; can frequently handle, finger and feel with the left hand; can climb ramps and stairs frequently, but can never climb ladders, ropes, or scaffolds; can never work at unprotected heights or around moving mechanical parts, or operate a motor vehicle; can frequently work in conditions where there are vibrations and pulmonary irritants; is limited to simple, routine and repetitive tasks, but not at a production rate pace (e.g., no assembly line work); can frequently respond appropriately to supervisors, coworkers, and the general public; and as far as dealing with changes to the work setting are concerned, is limited to simple, work-related decisions.

(Docket No. 13-2 at ECF pp. 20-21).

The ALJ concluded that Ms. Fairfield could perform past work, consistent with the vocational expert's (VE) opinion, including as a cashier and packer. Alternatively, at Step 5, the ALJ classified the claimant as a younger individual age 18-49, with a high school education and an ability to communicate in English. (Docket No. 13-2 at ECF p. 27). The ALJ found that there were a significant number of jobs in the economy that Plaintiff could still perform. Based on the testimony of the VE and, considering the claimant's age, education, work experience, and RFC, the ALJ concluded that the claimant would also be able to perform the jobs of industrial cleaner, store laborer, and hand packager. (Docket No. 13-2 at ECF p. 29).

II. **Review of Plaintiff's Assertions of Error**

> A. **The ALJ erred in the weight he assigned claimant's treating physician's source statement opinions, but did not err in his assessment of claimant's specialists, nor in failing to obtain a consultative examiner.**

Ms. Fairfield asserts that the ALJ did not give proper weight to her specialists, namely Dr. Atallah, Dr. Medhkour, and Dr. Wuescher. (Docket No. 25 at ECF p. 19).[1] Instead, she

---

[1] On reply, Plaintiff summarily argues that the ALJ failed to account for several other treating opinions—naming what appears to be nearly every physician or medical source in the record that was not previously discussed. These arguments are waived. *See Wright v. United States*, 139 F.3d 551, 553 (7th Cir. 1998) (issues not raised in initial district court brief are waived).

alleges, he improperly assigned controlling weight to Dr. Hagerman, who she reasons provided opinions that were unsupported by the record and that Dr. Hagerman did not rely on medical techniques or evidence. (Docket No. 25 at ECF p. 20).  She asserts that the ALJ erred by only addressing the specialists' etiology interpretations, ignoring their discussions regarding her functional limitations. Finally, she argues that the ALJ erred by "playing doctor" in not crediting the psychological record, but rather substituting his unsupported lay opinion based on his observations during claimant's hearing. (Docket No. 25 at ECF p. 22).

The Commissioner responds that the ALJ afforded proper weight to the physicians, noting that while the ALJ granted Dr. Hagerman's opinion great weight he also limited claimant's RFC further than Dr. Hagerman opinion provided. (Docket No. 30 at ECF p. 6).[2] The Commissioner concludes that Plaintiff's call for a psychological consultative examiner was disingenuous because the ALJ specifically asked counsel whether additional evidence was needed during the hearing and counsel replied the record was fully developed—both at the beginning and end of the hearing. (Docket No. 30 at ECF p. 8). Moreover, the Commissioner notes that the ALJ discussed and assigned great weight to the State agency psychologists, Dr. Voyten and Dr. Goldsmith. *Id.*

To start, the ALJ did not err in not assigning a weight to the aforementioned specialists' notes. It is true that a treating source is entitled to controlling weight when it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and when it is not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, to be considered a treating source the physician or other acceptable medical source

---

[2] The Court notes that the Commissioner does not respond to Ms. Fairfield's arguments in order, nor does the Commissioner respond in the same manner in which the issues were raised—thus, making it difficult to appropriately summarize the Commissioner's response to each issue individually. Thus, the Court has summarized Commissioner's responses to its best discernment.

8

must have an ongoing relationship with Plaintiff—in other words, the physician must see the Plaintiff frequently enough and long enough to be considered a treating physician. 20 C.F.R. §§ 404.1502, 416.902. Plaintiff provides no arguments that Drs. Atallah, Medhkour, or Wuescher fall within this definition and, tellingly, Drs. Atallah and Wuescher's names do not appear in Plaintiff's own summary of her medical history. On the Court's own review of the record, Drs. Atallah and Wuescher saw Plaintiff two times and one time, respectively. Based on that review and, chiefly, based on the fact that Plaintiff provides no evidence otherwise, the ALJ did not err by not identifying these physicians as treating source physicians. Indeed, these physicians fit the definition of a nontreating source: "Nontreating source means a physician . . . who has examined you but does not have, or did not have, an ongoing treatment relationship with you." *Id. See also*, *White v. Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005).

Although neither party summarizes Dr. Medhkour's treatment of Plaintiff, from the Court's review of the record it appears he first saw Ms. Fairfield on consult in August 2013—a year and a half after the alleged onset date. (Docket No. 13-11 at ECF pp. 9-10). Accordingly, the ALJ did not err in deciding not to treat Dr. Medhkour as a treating physician and need not assign him controlling weight. *See Bradley v. Barnhart*, 2006 WL 895868, at *3 (7th Cir. 2006) (holding ALJ did not err in determining a physician was not a treating source because he did not examine Plaintiff for the impairment in question until two years after the alleged onset date).

However, the ALJ did err in assigning "great weight" to Dr. Hagerman's opinion, particularly in his reliance on Dr. Hagerman's September 23, 2013, treating source note as it does not appear to be well-supported by the record and it is inconsistent with other evidence in the record. The ALJ afforded Dr. Hagerman "great weight because Dr. Haggerman [sic] has evaluated the claimant on multiple occasions, she has access to the claimant's test results, and

9

she has directly viewed the claimant's abilities." (Docket No. 13-2 at ECF p. 11). While these are appropriate factors, it does not appear that Dr. Hagerman had access to all of Plaintiff's results and, even if she did, these results were not used in her treating source statement, which the ALJ cites and relies upon. 20 C.F.R. §§ 404.1527, 416.927. Specifically, the ALJ afforded Dr. Hagerman's opinion that "'the claimant is able to work because she can care for toddlers without any problems'" great weight[3] for the above mentioned reasons. (Docket No. 13-2) (citing Docket No. 13-10 at ECF p. 30). The Court's review[4] of the treating source statement reveals Dr. Hagerman noted that she did not have any available consultative/diagnostic testing on file, and Dr. Hagerman responded in the negative when asked whether Plaintiff had any surgical or clinical intervention required, or any future plans of such treatment. (Docket No. 13-10 at ECF p. 80).

Given Dr. Medhkour's August 1, 2013 consult (Docket No. 13-11 at ECF p. 9) and Plaintiff's anterior cervical discectomy and fusion, scheduled for September 28, 2013, Dr. Hagerman's responses do not appear to be supported by the record; therefore, the ALJ's reliance on the same is improper. 20 C.F.R. §§ 404.1527, 416.927; *See also Engstrand v. Colvin*, 788 F.3d 655, 662 (7th Cir. 2015). This problem is exacerbated when one considers Dr. Medhkour's records post-surgery, which show mixed evidence of continuing functional limitations related to Plaintiff's cervical spine. For instance, Plaintiff returned on November 18, 2013 for a follow-up after surgery, where Dr. Medhkour noted neck tenderness but indicated that neck range of

---

[3] The Commissioner argues that it is misguided to say the ALJ assigned controlling weight on this opinion because the ALJ found Plaintiff further limited than Dr. Hagerman. However, the structure of the ALJ's opinion directly contradicts this conclusion and, even if the ALJ's "great weight" was less than controlling but more than no weight, as this opinion explains the statements are not substantiated by the medical evidence in the record—thus, the weight assigned to the statements was improper, even if it was "great weight" without at least addressing that inconsistency.
[4] In her brief Plaintiff claims that Dr. Hagerman was unaware of the alleged extent of Plaintiff's neck-related problems at the time she made her September 23, 2013, treating source statement, but provided the Court no citations to the record. (Docket No. 25 at ECF p. 20).

motion was normal. (Docket No. 13-12 at ECF p. 8). Plaintiff presented again on March 17 and April 21, 2014. (Docket No. 13-14 at ECF pp. 33-42). On exam, Dr. Medhkour noted no neck tenderness and normal range of motion, but did note right and left shoulder range of motion were abnormal. (Docket No. 13-14 at ECF p. 42). On March 5, 2015, Plaintiff presented to Dr. Medhkour, with complaints of neck tenderness, but Dr. Medkhour's examination showed Plaintiff had full range of motion of the cervical spine and the neck appeared supple. (Docket No. 13-14 at ECF p. 5). However, on March 28, 2015, Dr. Medhkour noted tenderness and decreased range of motion of Plaintiff's cervical spine and tenderness to palpation over the posterior neck on examination. (Docket No. 13-18 at ECF p. 9).

    These inconsistent examinations do not align with ALJ's indication that "the surgery was successful and the claimant was recovering well." (Docket No. 13-2 at ECF p. 23). While an ALJ need not address every piece of evidence in the record, he must address evidence contrary to his conclusion and cannot recite evidence only supportive of the same. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Although it possible this line of evidence will not impact the ALJ's RFC or ultimate determination, this cannot be determined based on the current record—thus, the Court recommends remand. On remand, the ALJ should address the weight assigned to Dr. Hagerman's opinions, particularly those from her treating source statement, in light of the inconsistencies the Court noted above and the ALJ should also address evidence in the record regarding Plaintiff's impairments post 2013 surgery.

    The Court disagrees that the ALJ was required to hire a psychologist or psychiatrist consultative examiner. Not only did Plaintiff not request a consultative examination during the April 2015 administrative hearing when the ALJ twice discussed Plaintiff's obligation to provide all evidence and/or asked if additional evidence was needed, but also the ALJ had a full record

on which to base his decision. (Docket No. 13-2 at ECF p. 37; Docket No. 13-2 at ECF pp. 97-98). While Plaintiff challenges the ALJ's observations at the administrative hearing, she ignores two key items. First, when commenting on these observations the ALJ "emphasized that this observation is only one among many being relied on in reaching a conclusion regarding the credibility of the claimant's allegations and the claimant's residual functional capacity." (Docket No. 13-2 at ECF p. 12). It is clear the ALJ had no intention and in fact did not "play doctor." Second, to further support that conclusion, the ALJ discussed and assigned great weight to State agency psychologists, Dr. Karla Voyten and Dr. Bruce Goldsmith. (Docket No. 13-2 at ECF p. 25). Each psychologist reviewed a complete record and opined that Plaintiff could perform simple and repetitive tasks, and adapt to routine and static duties. (Docket No. 13-3 at ECF pp. 6-7; Docket No. 13-3 at ECF pp. 9-10; Docket No. 13-3 at ECF pp. 36-37; Docket No. 13-3 at ECF pp. 39-40).

Finally, a consultative examination is sought when additional evidence is needed that is not contained in the record. *See* 20 C.F.R. §§ 404.1519, 416.917; *Skinner v. Astrue*, 478 F.3d 836, 844 (7th Cir. 2007) ("The ALJ is not required to order such [consultative] examinations, but may do so if an applicant's medical evidence about a claimed impairment is insufficient."). Given the record contained numerous mental health treatment notes and the opinions of two state agency psychologists, which supported the ALJ's RFC conclusion, a further psychiatric evaluation is unnecessary.

### B. The ALJ did not err in his use of claimant's activities of daily living in his analysis.

Plaintiff next argued that the ALJ erred by overemphasizing her activities of daily living, namely evidence that she cared for very young children at her home. (Docket No. 25 at ECF pp. 22-23). Plaintiff argues that daughter was assisting with these activities and her mother was also

12

available for her to help. Plaintiff asserts that the ALJ failed to explain the inconsistencies between activities of daily living, complaints of pain, and the medical evidence and, instead, erred by equating her activities of daily living with her ability to perform in a work environment in violation of *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (noting differences between daily activities and work, including flexibility in scheduling, help from family members, and lack of minimum performance standards).

      The Commissioner argues that the ALJ did not equate Plaintiff's activities of daily living with an ability to do work, instead relying on it to address the fact that Plaintiff was more able than what she alleged. (Docket No. 30 at ECF pp. 9-10).

      The ALJ pointed out that Plaintiff not only cared for her own children, but ran a daycare during the relevant period where she earned money under the table. (Docket No. 13-2 at ECF p. 22). The ALJ also noted Plaintiff's babysitting activities throughout the record, yet, these were referencing Plaintiff's medical source statements acknowledgements of her childcare activities. (e.g., Docket No. 13-2 at ECF p. 23). In making his credibility determination, the ALJ noted that the claimant has described daily activities which are not limited to the extent one would expect given the complaints of disabling symptoms and limitations, including her ability to care for very young children at home, which can be demanding, "without any particular assistance." (Docket No. 13-2 at ECF p. 26).

      An ALJ may not equate ones activities of daily living with their ability to engage in full-time work given that "a person has more flexibility in scheduling the former than the latter, can get help from other persons . . ., and is not held to a minimum standard of performance." *Bjornson*, 671 F.2d at 647. However, an ALJ can and must consider an individual's daily

13

activities in assessing the credibility of an individual's statements. SSR 96-7p.[5] To the extent the review of this issue calls into question the ALJ's credibility determination, the Court provides great deference to the ALJ's credibility finding only overturning it if it is "patently wrong." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Court does not agree that the ALJ erred in assessing Plaintiff's activities of daily living. The ALJ's summary of the hearing testimony and her ultimate credibility determination show that the ALJ used these activities of daily living to make the conclusion that Plaintiff was less credible because her alleged functional limitations did not align with her activities, specifically as they related to childcare. Here, Plaintiff testified she was able to babysit two children, ages four months and six months, at the same time and at least one overnight. (Docket No. 13-2 at ECF p. 59-62). She testified that she was paid for these services. *Id.* This is distinguishable from caring for her own children and more suggestive that her abilities were greater than her alleged limitations—thus permitting the ALJ to consider this evidence in making his credibility determination. There is no evidence that the ALJ equated this activity with her ability to maintain a full-time job, and thus the Court finds no error on this issue.

### C. The ALJ did not err in his assessment of whether claimant met Listing 1.04A.

Next, Plaintiff argues the ALJ erred by not properly considering Listing 1.04A because she had stenosis and impingement on her nerve root in her cervical vertebra and neuroanatomically corresponding dysfunction in her arm and hand. (Docket No. 25 at ECF p. 24). Plaintiff cites no portion of the record to support this proposition.

The ALJ found that Plaintiff did not satisfy the terms of Listing 1.04 because the Plaintiff is:

---

[5] SSR 96-7p was rescinded by SSR 16-3p on March 28, 2016, but is still the applicable ruling in this cause of action.

> [N]ot so functionally limited and the evidence does not support the medical findings required by Listing 1.04, such as a condition that results in compromise of a nerve root with evidence of nerve root compression, spinal arachnoiditis, or lumbar stenosis resulting in pseudoclaudication established by findings on appropriate medically acceptable imaging and manifested by chronic pain and weakness.

(Docket No. 13-2 at ECF p. 18).

A Social Security claimant bears the burden of proof at steps one through four, which focus on the claimant's personal medical condition and capacity. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Plaintiff was ultimately responsible for "furnish[ing] such medical and other evidence of the existence" of disability. 20 C.F.R. § 416.912(a), (c). Listing 1.04(A) requires:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

The Court notes that in the opening argument at the administrative hearing, Plaintiff's counsel did not even mention Listing 1.04 and instead told the ALJ, "I really think this is a step five case" (Docket No. 13-2 at ECF p. 38). *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007) ("[A] claimant represented by counsel is presumed to have made his best case before the ALJ . . ."). Moreover, Plaintiff points to no evidence of nerve root compression characterized by neuro-anatomic distribution of pain. Plaintiff claims that the evidence establishes impingement on her nerve root in her cervical vertebra and neuro-atomically corresponding dysfunction in her arm and hand, but fails to provide a citation to the record. (Docket No. 25 at ECF p. 24). She describes a magnetic resonance imaging (MRI) study showing disc protrusion, lateral recess stenosis, and mild cord indentation. (Docket No. 25 at ECF p. 15; *referring to* Docket No. 13-11 at ECF pp. 13-14). Additionally, a February 2015 cervical MRI made no mention of nerve root

compression or neuro-anatomic distribution of pain. (Docket No. 13-13 at ECF pp. 38-39). In sum, Plaintiff has not met her burden with regards to her Listing 1.04A argument.

### D. The ALJ did not err in his treatment of the claimant's work history.

Finally, Ms. Fairfield asserts that the ALJ erred by not crediting her strong work history. (Docket No. 25 at ECF p. 24). She argues that a claimant, like herself, with a good work record is entitled to substantial credibility when claiming an inability to work because of disability. *Id.* She also argues specifically that the ALJ erred in his treatment of ten thousand dollars in earnings, questioning whether it was substantial gainful activity, when it was "obvious" that it was built-up benefits paid out after her termination. (Docket No. 25 at ECF pp. 25-26). In response, the Commissioner argues that work history is just one factor to be considered in the ALJ's evaluation of a claimant's subjective allegations. (Docket No. 30 at ECF p. 10).

To start, the ALJ indicated that:

> While it appears that [the 2012 $10,448.05 in earnings] may have been performed at the substantial gainful activity level, the record is devoid of detailed wage information during this period. As such, because there is a full 12 month period of non-substantial gainful activity and in order to give the claimant the benefit of the doubt, the undersigned will continue with the sequential evaluations.

(Docket No. 13-2 at ECF p. 17). Plaintiff's argument with regards to this portion of the ALJ's decision is not persuasive. She admits her last day of work at the store seems to have been February 24, 2012, after which she took sick leave and was eventually terminated in March 2012—all dates that occurred after Plaintiff's alleged disability onset date of January 9, 2012. (Docket No. 25 at ECF p. 25). It is also apparent that, whatever doubt the ALJ had regarding this 2012 income he disregarded and answered Step 1 in Plaintiff's favor. Moreover, this Step 1 analysis is separate from and irrelevant to the ALJ's treatment of Plaintiff's work history during his credibility determination, because the discussion is clearly made in an effort to determine

16

eligibility for benefits and not made in an effort to credit or discount Plaintiff's statements about pain and its functional effects.

In *Hill v. Colvin*, cited by Plaintiff, the proposition that a claimant's good work record is entitled to substantial credibility was precipitated by an ALJ's reasoning that a claimant was stretching the truth about her neck pain because she performed manual labor for many years after neck surgery. 807 F.3d 862, 868 (7th Cir. 2015). The Court reasoned that using the work record to cut against credibility was backward thinking. *Id.* In *Shumaker v. Colvin*, where the ALJ was silent with regards to the claimant's substantial work history, the Seventh Circuit noted that "work history is just one factor among many, and it is not dispositive" and that the ALJ's silence with regards to the claimant's work history was not enough to negate the substantial evidence supporting the adverse credibility finding. *Shumaker v. Colvin*, 2015 WL 8479517, at *5 (7th Cir. 2015).

This case is more akin to *Shumaker* than *Hill*. Here, the ALJ's credibility determination does not cite Plaintiff's long work history as a reason to believe she was stretching the truth. Instead, the ALJ noted a lack of persuasive examination finding, her daily activities, including watching very young children in her home, and improvement with her prescribed medications as weighing against her alleged symptomatology. (Docket No. 13-2 at ECF pp. 25-26). The ALJ's credibility determination, like that in *Shumaker*, was silent on the issue of her work history, and does not require reversal. See *Shumaker*, 2015 WL 8479517, at *5.

## Conclusion

For all these reasons, the Magistrate Judge recommends that the Court grant Plaintiff's brief in support of appeal (Docket No. 25) and that this case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration, consistent with this opinion.

17

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

**SO RECOMMENDED** the 11th day of July, 2017.

Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.